**John FLOOD, et al., Plaintiffs,**

v.

**Nicholas VEGHTS, et al., Defendants.**

**No. 94 C 2985.**

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 15, 1995.

---

Noel T. Wroblewski, Combined Counties Police Ass'n, Palatine, IL, for plaintiffs.

Ann L. Wallace, U.S. Attorney's Office, Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

This case involves the rejection by the National Credit Union Administration Board of a proposed credit union's application for federal share insurance. The plaintiffs' complaint seeks judicial review of the agency's action pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq., and due process in accordance with the Fifth Amendment of the Constitution. The defendants have moved for dismissal pursuant to FED. R.CIV.P. 12(b)(1), (2), and (6). For the reasons stated below, the motions to dismiss are granted in part and denied in part.

## I. BACKGROUND

The Federal Credit Union Act ("Act") provides for the chartering and incorporation of federal credit unions. 12 U.S.C. §§ 1751 et seq. A federal credit union is defined as a cooperative association organized in accordance with the provision of the Act for the purpose of promoting thrift among its members and creating a source of credit for provident or productive purposes. Id. at § 1752(1). Membership is limited to groups that have a common bond of occupation or association, or to groups within a well-defined neighborhood, community, or rural district. Id. at § 1759.

The Act designates the National Credit Union Administration ("NCUA") with the responsibility and authority for administering its provisions. See generally id. at §§ 1752a(a), 1781(a). The NCUA is an independent executive agency managed by a three-member board. Id. at § 1752a. Among its responsibilities, the Board insures the member accounts of all federal credit unions in the amount of $100,000 per account. Id. at § 1781(a). State-chartered credit unions may also qualify for insurance coverage. Id. at § 1781(a), (b).

For a state-chartered credit union to gain insurance coverage, it must submit an application to the Board. Id. at § 1781(b). The Board, after considering a number of factors that reflect whether the applicant is a safe insurance risk, must approve or disapprove of the application. Id. at 1781(c). Upon the approval of any application, the Board shall notify the applicant and issue to it a certificate evidencing that it is a federally insured credit union. Id. at § 1781(d).

The current dispute concerns the Board's denial of an application for insurance coverage. The plaintiffs are the subscribers and sponsor of the Police Credit Union, a newly chartered credit union under the laws of the State of Illinois. By law, each Illinois credit union must insure its share accounts with the NCUA or with such other insurers as approved by the state. 205 ILCS 305/58. In accordance with that, the Police Credit Union applied for insurance with the NCUA, as well as a private insurer.

The application before the NCUA was first considered and denied by Nicholas Veghts, the NCUA's Regional Director and a defendant in this case. The credit union then sought reconsideration. Defendant Veghts did reconsider and again denied the application. Thereupon, the credit union appealed to the NCUA Board. This time the Board issued a final denial.

## II. DISCUSSION

The plaintiffs now bring this action, making two claims for relief. First, the plaintiffs seek judicial review under the Administrative Procedure Act, 5 U.S.C. § 706.[1] Second, the plaintiffs contend that they were deprived of property without due process of law in violation of the Fifth Amendment. The court considers each in turn.

### A. Judicial Review of the Agency Action

In the plaintiffs' first claim, they seek judicial review of the Board's decision to deny their application. Plaintiffs argue that the Board's findings and decision were arbitrary and capricious, as well as beyond the statutory and regulatory scheme set out in the Federal Credit Union Act. Meanwhile, defendants argue that this matter should be deemed by the court "committed to agency discretion by law."

The court must begin with "the strong presumption that Congress intends judicial review of administrative action." *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 670, 106 S.Ct. 2133, 2135, 90 L.Ed.2d 623 (1986). That presumption may be overcome "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967) (citations omitted). With that, the court determines whether the plaintiffs are entitled to judicial review.

The Administrative Procedure Act ("APA") provides that any person "adversely affected or aggrieved" by an agency action may obtain judicial review thereof, so long as the decision challenged represents a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. §§ 701–06. In the usual case, a litigant will contest an action (or failure to act) by an agency on the grounds that the agency has neglected to follow the statutory directives of Congress. *Webster v. Doe,* 486 U.S. 592, 599, 108 S.Ct. 2047, 2051–52, 100 L.Ed.2d 632 (1988). Section 701(a) of the APA, however, limits the application of the APA to situations in which judicial review is not precluded by statute (§ 701(a)(1)), and the agency action is not committed to agency discretion by law (§ 701(a)(2)).

The Court has explained the distinction between §§ 701(a)(1) and (a)(2) in the following way: "Subsection (a)(1) is concerned with whether Congress expressed an intent to prohibit judicial review; subsection (a)(2) applies 'in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Webster,* 486 U.S. at 599, 108 S.Ct. at 2051 (citing *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). The court must consider whether either subsection applies.

Before ruling on subsection (a)(1), "[w]hether and to what extent a particular statute precludes judicial review is determined not only from its expressed language but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block v. Community Nutrition Institute,* 467 U.S. 340, 345, 104 S.Ct. 2450, 2453–54, 81 L.Ed.2d 270 (1984). In light of that, the defendants point out that throughout the Federal Credit Union Act, Congress has provided for administrative and judicial review of a number of other actions by the NCUA Board. *See, e.g.,* 12 U.S.C. § 1786(b)(2) (termination of insured credit union status), 12 U.S.C. § 1786(e) (opinion of Board as to unsound condition of credit union), 12 U.S.C. § 1786(f) (temporary cease and desist order). Thus, they argue, because the Federal Credit Union Act contained no

---

1. In the complaint, the plaintiffs outline three claims for relief. However, the first and third claims are repetitive. Both claims seek judicial review of the agency action under the Administrative Procedure Act.

provision for review of a denial of an application for federal share insurance, this reflects persuasive evidence of Congress' intent to exclude judicial review. Their argument is logical and appears to make sense; however, after consideration, the court rejects it.

■■■ Simply because the Federal Credit Union Act contains no provision granting judicial review to one action by the Board while other parts of the statute provide a full-blown hearing at which parties may, through counsel, submit written materials and orally argue their grievances, *see, e.g.*, 12 U.S.C. § 1786(i), does not reflect conclusive evidence that Congress intended to preclude judicial review. It may only provide evidence as to the extent of judicial review that Congress did intend. Surely, in those instances where the organic statute does not mention judicial review, the Administrative Procedure Act still applies; thus, a party does have the right to a court's determination whether an agency's action was "arbitrary and capricious." In addition, the defendants have given the court no further evidence of Congress' intent, *e.g.*, legislative history, objectives of the statute, etc. Finally, when a court is faced with the question of providing limited judicial review under the APA or no review at all, the presumption forces the court to err on the side of giving judicial review. Accordingly, the court rejects the defendants' argument under (a)(1).

Next, the court must determine whether the Board's agency is committed to agency discretion by law. The court has explained that, under (a)(2), "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985). In *Heckler*, the Court was faced with the question whether the Food and Drug Administration's ("FDA") decision not to undertake an enforcement proceeding against the use of certain drugs in administering the death penalty was subject to judicial review. There, the Court held that, since the statute conferring power on the FDA to prohibit the unlawful misbranding or misuse of drugs provided no substantive standards on which a court could base its review, the enforcement actions were committed to the complete discretion of the FDA.

■■■ In this case, however, the court does have a meaningful standard against which to judge the agency's exercise of discretion. The Federal Credit Union Act states that the Board shall disapprove an application if it finds one of the following five things to be true: (1) the credit union's reserves are inadequate; (2) its financial condition and policies are unsafe or unsound; (3) its management is unfit; (4) insurance of its member accounts would otherwise involve undue risk to the fund; or (5) its powers and purposes are inconsistent with the promotion of thrift among its members and the creation of a source of credit for provident or productive purposes. 12 U.S.C. § 1781(c)(2). In addition, in furtherance of performing that function, the NCUA has issued regulations outlining some objective criteria that aid the Board in making the above decisions. Therefore, while it is true that Congress has given the NCUA discretion to decide whether a credit union should be insured, Congress has not given the Board unlimited discretion that cannot be reviewed by a court. Accordingly, the court also rejects the defendants' argument under (a)(2) and holds that the Board's action is subject to judicial review under the APA. Defendants' motion to dismiss the plaintiffs' first claim is denied. Judicial review of the NCUA Board's denial of the application will be entertained in a summary judgment motion.

**B. *Due Process***

In their second claim, plaintiffs argue that the defendants deprived them of a "property interest" without "procedural" due process, in violation of the Fifth Amendment. Defendants, meanwhile, argue that the plaintiffs have no protectable property interest and thus no constitutional claim.

The Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property without due process of law." U.S. Const. amend V. Plaintiffs do not argue that they have a life or liberty interest. Thus, the question here is whether there has been any deprivation of "property" which

would bring the due process guarantee into play.

In order to enjoy a property interest in a particular governmental benefit, such as a license or a charter, a person "must have more than an abstract need or desire for it" and "more than a unilateral expectation of it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Instead, that person must demonstrate that he has a "legitimate claim of entitlement" to the receipt or possession of the benefit. *Id.* In the ordinary case, the determination of an "entitlement" is relatively simple, since it arises, if at all, from the terms of a statute. *See, e.g., Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (entitlement to welfare benefits). For example, in *Goldberg*, the welfare recipients had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them. While the recipients had not yet shown that they were, in fact, within the statutory terms of eligibility, the Court held that they did have a property interest and a right to a hearing at which they might attempt to do so.

The NCUA has already been involved in litigation with respect to the question of what constitutes a property interest. *Salinas Valley Community Federal Credit Union v. National Credit Union Administration*, 564 F.Supp. 701 (N.D.Cal.1983). In that case, the NCUA was in the process of involuntarily liquidating the plaintiff credit union. The plaintiff sought an opportunity to present grounds and reasons why its charter should be restored and why it should not be placed in involuntary liquidation. One issue before the court was whether the plaintiff enjoyed a property interest in its continued existence as a credit union. The court found that implicit in the statutory scheme created by the Federal Credit Union Act, a federal credit union has a right, absent a determination of insolvency or misconduct, to exist and continue undisturbed indefinitely. *Id.* at 705. Because that right did not rest in the uncontrolled discretion of the NCUA Board, the court held that the plaintiff did have a property interest. *Id.*

In this case, a state-chartered credit union seeks federal share insurance under the same statute and argues that it has a property interest through its entitlement to the receipt of insurance. The defendants argue that there is no property interest at stake because the plaintiffs only have a unilateral desire to obtain federal share insurance and because the NCUA Board has discretion to accept or reject their application.

The Federal Credit Union Act provides that the Board shall insure the accounts of all federal credit unions and may insure the member accounts of credit unions organized and operated according to the laws of any State. 12 U.S.C. § 1781. From that, one might infer that, while the Board must insure federal credit unions, the Board has unlimited discretion to accept or reject any application by a state-chartered credit union. However, as the court discussed with respect to the first claim, the Board's discretion is controlled by the Act. Before approving an application, the Board is required to consider:

"(A) the history, financial condition, and management policies of the applicant;

(B) the economic advisability of insuring the applicant without undue risk of the fund;

(C) the general character and fitness of the applicant's management

(D) the convenience and needs of the members to be served by the applicant; and

(E) whether the applicant is a cooperative association organized for the purpose of promoting thrift among its members and creating a source of credit for provident or productive purposes."

*Id.* at 1781(c)(1).

The Board shall disapprove the application "if it finds that its reserves are inadequate, that its financial condition and policies are unsafe or unsound, that its management is unfit, that insurance of its member accounts would otherwise involve undue risk to the fund, or that its powers and purposes are inconsistent with the promotion of thrift among its members and the creation of a source of credit for provident or productive

purposes." Furthermore, the NCUA has issued federal regulations which provide objective criteria by which the Board can make the above decisions. 12 C.F.R. § 741.9. Therefore, as in *Salinas Valley,* the court finds that the plaintiff's application does not rest in the uncontrolled discretion of the Board. Rather, the Board shall reject an application only if the credit union is too grave a risk under the terms of the Act. At the same time, if an applicant can show that the Board does not have a ground to reject its application, the applicant should qualify for insurance. Consequently, the court holds that the plaintiffs do have a property interest.

 Next, given that a property interest is at stake, the court must determine what procedures are due the plaintiffs. The fundamental requirement of due process is the "opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). The concept of due process, however, is flexible "and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). To determine what process is due, the Supreme Court has set out a balancing test requiring consideration of three distinct factors. They are: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903.

 In this case, due process does not require the full panoply of procedural safeguards that plaintiffs seek in their complaint nor does it require a full evidentiary hearing. The guarantees of due process vary with the nature of the interest at stake; a loose procedure of notice and an opportunity for informal response may suffice. *See, e.g., Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d

725 (1975); *Foster v. Ripley,* 645 F.2d 1142 (D.C.Cir.1981). This is one of those cases. Due process requires that the plaintiffs be provided some opportunity to object in writing to the agency's rejection of their application. This would be satisfied if the credit union, after notice, was permitted to submit objections to the NCUA, thus giving the NCUA an opportunity to explore those objections.

 Importantly, the court holds that the agency has done just that and satisfied the plaintiffs' right to due process. The facts in the administrative record bear that out. On November 3, 1992, defendant Veghts, the Regional Director of the NCUA initially denied the plaintiffs' application. In response, on November 25, 1992, the plaintiffs requested reconsideration by defendant Veghts. The request was granted and plaintiffs submitted thirty-one pages of additional documentation in support of their charter application. On June 16, 1993, defendant Veghts reconsidered and again denied the application. Plaintiffs, in turn, appealed to the NCUA Board. They submitted another lengthy response to the agency's denial. Finally, on March 18, 1994, the Board issued a final denial of the plaintiffs' application.

Based on the foregoing, the court is confident that the plaintiffs received the process that is due them in accordance with the Fifth Amendment. Therefore, defendants' motion to dismiss plaintiffs' due process claim is granted.

### CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part. Defendants' motion to dismiss the plaintiffs' claim for judicial review is denied. Defendants' motion to dismiss plaintiffs' due process claim is granted.